# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JCI METAL PRODUCTS,<br><br>          Plaintiff,<br>vs.<br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>          Defendant. | CASE NO. 09-CV-2139 - IEG (AJB)<br><br>ORDER DENYING MOTION TO STRIKE [Doc. No. 18] |

   This is a reverse-FOIA case, with Plaintiff JCI Metal Products ("JCI") seeking to prevent disclosure of certain information relating to its past contract with Defendant United States Department of the Navy ("Navy"). Currently before the Court is Defendant's motion to strike Plaintiff's Supplementation to the Administrative Record. Having considered the parties' arguments, and for the reasons set forth herein, the Court **DENIES** the motion to strike.

## BACKGROUND

### I. Factual background

   On June 4, 2002, Fleet and Industrial Supply Centers-San Diego ("FISCSD"), a Navy command in San Diego, awarded Contract No. N00244-02-D-0026 to JCI. (Certified Administrative Record ("CAR"), at 64.) After an initial one-year term, the contract provided for four one-year options, with a maximum contract term of five years. (Id. at 166-68.) The option years were exercised and the contract expired in 2007. In February 2009, FISCSD received a Freedom of Information Act

("FOIA") request from attorney Clinton D. Hubbard, seeking Contract No. N00244-02-D-0026 and related documents. (Id. at 2-3.) Because the requested documents contain JCI's line item prices, FISCSD informed JCI in writing of the FOIA request and provided an opportunity for JCI to establish that its prices are legally exempt from release. (Id. at 5.) FISCSD sent its letter to JCI on February 24, 2009, and indicated that JCI had to respond by March 6, 2009, or JCI would be deemed to have consented to the release of the information. (Id.)

JCI responded with a letter from its counsel, Kevin Cauley, dated March 5, 2009. (Id. at 7-21.) JCI asserted that the unit prices for each contract line item ("CLIN") and the total price amount for each CLIN fell within Exemption 4 of the FOIA, which exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." (Id. at 7.) According to JCI, the disclosure of these items would "significantly increase the probability that JCI's competitors would attempt to underbid it when the new contract for the services in Contract N00244-02-D-0026 is bid." (Id. at 8.) Moreover, the disclosure of these items would allow JCI's competitors to determine: (1) the structure of the pricing methods used by JCI; (2) JCI's bottom line prices; and (3) the overall bid strategy of JCI. (Id. at 8.) FISCSD's FOIA Officer, Sherri Dollick, responded with a letter dated March 6, 2009, pointing out that the arguments raised in Mr. Cauley's letter did not establish the likelihood of competitive harm necessary to justify withholding the contract. (Id. at 23-24.) Nonetheless, the FISCSD provided JCI with an opportunity to submit additional information by March 13, 2009. (Id.) Mr. Cauley responded with a letter dated March 13, 2009, reiterating why this information falls within Exemption 4. (Id. at 26-51.) After analyzing JCI's submissions, the FISCSD notified JCI that a final agency decision had been made to release the contract. (Id. at 174.) FISCSD also advised JCI of its right to take court action within 10 days. (Id.)

**II.     Procedural background**

On September 30, 2009, JCI filed the Complaint in this action and applied for a temporary restraining order to prevent release of the contract. Without admitting the merits of JCI's position, the Navy agreed to delay releasing the contract pending a final decision on the merits by this Court, and the Court entered an order to that effect on October 7, 2009. [See Doc. No. 7]. On January 25, 2010, the Navy filed with the Court a Certified Administrative Record ("CAR") in this matter. [Doc. No.

1  14]. Following the filing of the CAR, JCI had 45 days to submit any supplementation to the CAR. On
2  March 15, 2010, the Court granted the parties' joint motion for one week extension for JCI to submit
3  supplementation to the CAR. [Doc. No. 16]. On March 18, 2010, JCI filed its Supplementation to the
4  Administrative Record. [Doc. No. 17]. The supplementation consists of a Declaration of Mark Withers
5  and eight work orders allegedly related to the Navy Contract No. N00244-02-D-0026.

6  **III.    Present motion**

7  On April 7, 2010, the Navy filed the present motion to strike JCI's supplementation to the
8  CAR, arguing that these materials were not a part of the agency's record during the administrative
9  process and that FISCSD was not even seeking permission to release the eight work orders included
10 in the supplementation. On May 3, 2010, JCI filed an opposition to the Navy's motion. JCI first argues
11 that supplementation is allowed because the agency's factfinding procedures in this case were
12 inadequate due to the fact that JCI was not allowed an opportunity to appeal the initial disclosure
13 decision. Second, JCI argues supplementation should be allowed because the FISCSD did not provide
14 JCI with a reasonable time to lodge its objections to the disclosure. Finally, JCI asserts that the
15 supplementation documents do not create a new record because: (1) the eight work orders are a part
16 of the Navy Contract No. N00244-02-D-0026 and as such should have been a part of the
17 administrative record; and (2) the Declaration of Mark Withers sets forth essentially the same evidence
18 and argument as the initial two letters from Mr. Cauley. However, JCI admits that the Withers'
19 Declaration also "further explains how a competitor may use JCI's CLINs to determine JCI's
20 multiplier and be able to successfully underbid JCI in future contracts." (See Pl. Opp. to Def. Motion
21 to Strike, at 5 [Doc. No. 51].)

**DISCUSSION**

23 A party seeking to enjoin the government from releasing records pursuant to FOIA does not
24 have a cause of action under FOIA itself. Chrysler Corp. v. Brown, 441 U.S. 281, 293-94 (1979).
25 Rather, that party may seek review of the agency's final decision under the Administrative Procedures
26 Act ("APA"), 5 U.S.C. §§ 701-06. Pac. Architects & Engineers Inc. v. U.S. Dep't of State, 906 F.2d
27 1345, 1347-48 (9th Cir. 1990). In the present case, the parties do not dispute that the district court's
28 standard of review under the APA is whether the agency's action was "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law." See id. at 1348 (quoting 5 U.S.C. § 706(2)(A)). "In determining whether an agency's decision is arbitrary or capricious, the court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. This inquiry must be searching and careful, but the ultimate standard of review is a narrow one.'" Morongo Band of Mission Indians v. F.A.A., 161 F.3d 569, 573 (9th Cir. 1998) (quoting Marsh v. Or. Natural Res. Council, 490 U.S. 360, 278 (1989)).

**I.      Scope of review**

The parties, however, do dispute the appropriate *scope* of review. The Navy argues that the Court should limit its review to the administrative record, while JCI argues that the Court can conduct a *de novo* review in this case because the agency's factfinding procedures were inadequate.

A court reviewing an agency decision typically may not consider evidence outside the record to determine whether the agency made the correct decision. Asarco, Inc. v. U.S. E.P.A., 616 F.2d 1153, 1159-60 (9th Cir. 1980). However, a *de novo* review is permitted in two situations: (1) "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or (2) "when issues that were not before the agency are raised in the proceeding to enforce nonadjudicatory agency action." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971); see also Camp v. Pitts, 411 U.S. 138, 141-42 (1973); Pac. Architects, 906 F.2d at 1348. Because the present case concerns an "agency action to release information pursuant to the FOIA against the wishes of the party that submitted the information to the government," the Ninth Circuit has held that this type of action is "adjudicatory in nature." See Pac. Architects, 906 F.2d at 1348 (citing Acumenics Research & Tech. v. Dep't of Justice, 843 F.2d 800, 804 (4th Cir. 1988)). The question this Court must decide, therefore, is whether the Navy's factfinding procedures in this case were inadequate.

Plaintiff argues the Navy's factfinding procedures were inadequate because it was never allowed to "appeal" the Navy's determination or have a "face-to-face meeting" that would in essence amount to an "appeal." In doing so, Plaintiff relies on the Fourth Circuit's decision in Acumenics, 843 F.2d 800, as well as on District of Columbia Circuit's decision in Nat'l Org. for Women v. Social Sec. Admin., 736 F.2d 727 (D.C. Cir. 1984). However, in neither of those cases was the right to "appeal" essential to the holding. For example, in Nat'l Org. for Women, the court noted that an absence of an

administrative appeal from the second tier of review "hardly proves the procedures to be inadequate." 736 F.2d at 746. Rather, "[a]gency adjudication must become final at some point, and after that point aggrieved parties can resort to the courts." Id. The mere fact that appeal was provided for under the regulations being reviewed in that case does not establish that the court considered that factor to be essential to the determination of whether the agency's factfinding procedures were adequate. Likewise, in Acumenics, the court specifically noted that it was expressing no view as to whether procedures without "appeal" would be inadequate. See 843 F.2d at 805 n.5.

Indeed, as Defendant points out, the Ninth Circuit has upheld as "adequate" factfinding procedures that did not provide for an appeal of the agency's decision. See Pac. Architects, 906 F.2d at 1348 (finding the State Department's factfinding procedures adequate where the objecting party was given notice of the request for information, was provided with an opportunity to object, and was then provided with a statement of reasons for the agency's decision). Likewise, in the present case, the FISCSD's factfinding procedures appear to be adequate because: (1) JCI was given notice that there was a FOIA request for the contract; (2) it was given an initial opportunity to respond; (3) it was then provided with an explanation why FISCSD believed that the requested material did not fall within the asserted exemption to the FOIA; and (4) it was provided with a further opportunity to submit additional information in support of its objections to the release of the requested information. In light of this, it is clear that JCI "was given every opportunity in advance of disclosure to present its strongest case against disclosure as well as an opportunity to answer [the FISCSD's] arguments in favor of disclosure." See Acumenics, 843 F.2d at 805. Accordingly, at least in this case, the Court finds that the absence of an appeal mechanism does not render the agency's factfinding procedures "inadequate," such that the Court would have to apply a *de novo* scope of review. See TRIFID Corp. v. Nat'l Imagery & Mapping Agency, 10 F. Supp. 2d 1087, 1093-94 (E.D. Mo. 1998) (concluding that the absence of an appeal mechanism did not render the agency's procedures defective).

**II.    Reasonable time to respond**

Next, JCI argues that by giving it until March 6, 2009 to file an initial response–which amounted to a period of only ten days–the Navy did not provide JCI with a "reasonable time" to lodge its objections to the disclosure. The Executive Order No. 12,600 provides that:

> When notification is made pursuant to section 1, each agency's procedures shall, to the extent permitted by law, afford the submitter a reasonable period of time in which the submitter or its designee may object to the disclosure of any specified portion of the information and to state all grounds upon which disclosure is opposed.

Predisclosure Notification Procedures for Confidential Commercial Information, Exec. Order No. 12,600, § 4 (June 23, 1987). Notably, with respect to records obtained from a non-U.S. Government source, the applicable regulations provide that the source of the information "shall be notified promptly of that request and afforded reasonable time *(e.g., 30 calendar days)* to present any objections concerning the release." 32 C.F.R. § 286.23(h)(1) (emphasis added).

There is, however, little basis to JCI's argument that the "reasonable period of time" as used in the Executive Order No. 12,600 *must be* at least 30 calendar days. Rather, as Defendant correctly points out, the use of the parenthetical phrase "e.g., 30 calendar days" indicates that 30 days was meant to be only an *example* of what constitutes a reasonable time to provide objections. See, e.g., TRIFID Corp., 10 F. Supp. at 1095 (agreeing with defendant that "the thirty-day period of § 286.23(h)(1) is not mandatory, but rather is provided parenthetically as an example of a reasonable time"). In the present case, JCI was given reasonable time in which to lodge its objections. For example, although it was provided with a ten-day period, JCI filed its objections on March 5, 2009–one day before the deadline. Likewise, there is no indication that JCI needed or requested a longer period to respond, and JCI has failed to establish any prejudice from the provision of a shorter period. Finally, after reviewing JCI's initial objections, the agency provided JCI with an additional week to submit further objections, and JCI did so on March 13, 2009.. There is again no indication that JCI needed or requested a longer period to respond. On these facts, the Court finds the agency afforded JCI "a reasonable period of time" as required by Section 4 of the Executive Order No. 12,600 in which to object to the disclosure.

### III.   A narrow exception

Finally, JCI argues that the disputed documents merely explain what is already in the administrative record. According to it, the eight work orders should be considered because they are a part of the Contract No. N0024-02-D-0026, and they provide a further illustration of how a competitor can utilize JCI's CLINs to result in substantial competitive harm. Likewise, the Withers' Declaration should be considered because it sets forth essentially the same evidence and argument as

the initial two letters from Mr. Cauley, but also further explains how a competitor can use JCI's CLINs to determine JCI's multiplier and be able to successfully underbid JCI on future contracts.

As previously noted, "where the district court reviews agency action under the arbitrary and capricious standard, it is not entitled to conduct a de novo hearing." Asarco, 616 F.2d at 1159 (citing Camp, 411 U.S. 138). "The focal point for judicial review is the administrative record already in existence, 'not some new record made initially in the reviewing court.'" Id. (quoting Camp, 411 U.S. at 142). As the Ninth Circuit explained:

> When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency. This is true even if such judicial review is not strictly de novo in the sense that the court also considers the administrative record.

Id. at 1160. Nevertheless, the Ninth Circuit acknowledged that:

> It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not. The court cannot adequately discharge its duty to engage in a "substantial inquiry" if it is required to take the agency's word that it considered all relevant matters.

Id. Accordingly, the Ninth Circuit reconciled these two conflicting considerations by holding that although the reviewing court can go outside the administrative record on certain occasions, that ability should be circumscribed to a narrow section of cases. In other words,

> If the reviewing court finds it necessary to go outside the administrative record, it should consider evidence relevant to the substantive merits of the agency action only for background information, as in Bunker Hill [Co. v. EPA, 572 F.2d 1286 (9th Cir. 1977)], or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision.

Id.

In the present case, the supplemental documents seem to fall within this narrow exception. First, with respect to the eight work orders, it appears they are related to the Navy Contract No. N0024-02-D-0026, which is at issue in this reverse-FOIA case. The Navy does not dispute that this is so. Moreover, JCI argues the work orders will be helpful in demonstrating *how* a competitor can utilize JCI's CLINs to cause it substantial competitive harm. Viewing all of this together, the Court agrees that it should not be "straightjacketed to the original record" in trying to determine whether the release of the items in Contract No. N0024-02-D-0026 would cause JCI substantial competitive harm.

1  See Bunker Hill, 572 F.2d at 1292 (noting that the courts "are not straightjacketed to the original
2  record in trying to make sense of complex technical testimony" and requesting the parties to provide
3  supplementary materials to aid the court in its understanding of the underlying dispute). Rather, the
4  Court believes the eight work orders should be considered because they provide helpful "background
5  information." See Asarco, 616 F.2d at 1160.

6  As for the Withers' Declaration, it appears to be merely restating the same arguments as
7  provided in Mr. Cauley's letters to the FISCSD and in JCI's moving papers. Accordingly, to the extent
8  it is consistent with the administrative record, the Court declines to strike this document. See Ursack
9  v. Sierra Interagency Black Bear Group, No. 08-1808 SC, 2009 WL 2422784, at *7 (N.D. Cal. Aug.
10 6, 2009) (noting that the court would not strike plaintiffs' statement of undisputed facts, which they
11 submitted in supplementation of the administrative record, where it "simply repeats arguments and
12 characterizations found in Plaintiffs' Motion"). Moreover, to the extent the declaration contains
13 portions that elaborate on several issues, the Court believes their consideration might be helpful "for
14 the limited purposes of ascertaining whether the agency considered all the relevant factors" in making
15 its decision. See Asarco, 616 F.2d at 1160. Finally, there is no indication that there will be any
16 prejudice to the Navy from the consideration of the Withers' Declaration.

### CONCLUSION

18 For the foregoing reasons, although the Court rejects JCI's arguments that the agency's
19 factfinding procedures in this case were inadequate or that it was not afforded a reasonable period of
20 time to file its initial objections, the Court nonetheless **DENIES** the Navy's motion to strike because
21 the supplemental documents provide "background information" on the contract at issue and because
22 they may be relevant for ascertaining whether the agency considered all the relevant factors.

23 **IT IS SO ORDERED.**

25 DATED: May 18, 2010

26 *Irma E. Gonzalez*
IRMA E. GONZALEZ, Chief Judge
United States District Court