# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JCI METAL PRODUCTS,<br><br>                                Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>                                Defendant. | CASE NO. 09-CV-2139 - IEG (AJB)<br><br>ORDER:<br><br>(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 22]; and<br><br>(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 23]. |

This is a reverse-FOIA case, with Plaintiff JCI Metal Products ("JCI") seeking to prevent disclosure of certain information relating to its past contract with Defendant United States Department of the Navy ("Navy"). Currently before the Court are Plaintiff's and Defendant's cross-Motions for Summary Judgment. Having considered the parties' arguments, and for the reasons set forth herein, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## BACKGROUND

**I.    Factual background**

On June 4, 2002, Fleet and Industrial Supply Centers-San Diego ("FISCSD"), a Navy command in San Diego, awarded Contract No. N00244-02-D-0026 to JCI. (Certified Administrative

1 Record ("CAR"), at 64.) After an initial one-year term, the contract provided for four one-year
2 options, with a maximum contract term of five years. (Id. at 166-68.) The option years were exercised
3 and the contract expired in 2007. In February 2009, FISCSD received a Freedom of Information Act
4 ("FOIA") request from attorney Clinton D. Hubbard, seeking Contract No. N00244-02-D-0026 and
5 related documents. (Id. at 2-3.) Because the requested documents contain JCI's line item prices,
6 FISCSD informed JCI in writing of the FOIA request and provided an opportunity for JCI to establish
7 that its prices are legally exempt from release. (Id. at 5.)

8 JCI responded with a letter from its counsel, Kevin Cauley, dated March 5, 2009. (Id. at 7-21.)
9 JCI asserted that the unit prices for each contract line item ("CLIN") and the total price amount for
10 each CLIN fell within Exemption 4 of the FOIA, which exempts from disclosure "trade secrets and
11 commercial or financial information obtained from a person and privileged or confidential." (Id. at
12 7.) According to JCI, the disclosure of these items would "significantly increase the probability that
13 JCI's competitors would attempt to underbid it when the new contract for the services in Contract
14 N00244-02-D-0026 is bid." (Id. at 8.) Moreover, the disclosure of these items would allow JCI's
15 competitors to determine: (1) the structure of the pricing methods used by JCI; (2) JCI's bottom line
16 prices; and (3) the overall bid strategy of JCI. (Id. at 8.) FISCSD's FOIA Officer, Sherri Dollick,
17 responded with a letter dated March 6, 2009, pointing out that the arguments raised in Mr. Cauley's
18 letter did not establish the likelihood of competitive harm necessary to justify withholding the
19 contract. (Id. at 23-24.) Nonetheless, the FISCSD provided JCI with an opportunity to submit
20 additional information by March 13, 2009. (Id.) Mr. Cauley responded with a letter dated March 13,
21 2009, reiterating why this information falls within Exemption 4. (Id. at 26-51.) After analyzing JCI's
22 submissions, the FISCSD notified JCI that a final agency decision had been made to release the
23 contract. (Id. at 174.) FISCSD also advised JCI of its right to take court action within 10 days. (Id.)

24 **II.     Procedural background**

25 On September 30, 2009, JCI filed the Complaint in this action and applied for a temporary
26 restraining order to prevent release of the contract. Without admitting the merits of JCI's position, the
27 Navy agreed to delay releasing the contract pending a final decision on the merits by this Court, and
28 the Court entered an order to that effect on October 7, 2009. [See Doc. No. 7]. On January 25, 2010,

1  the Navy filed with the Court a Certified Administrative Record ("CAR") in this matter. [Doc. No.
2  14]. On March 18, 2010, JCI filed its Supplementation to the Administrative Record ("SAR"). [Doc.
3  No. 17]. The supplementation consists of a Declaration of Mark Withers and eight work orders
4  allegedly relevant to the Navy Contract No. N00244-02-D-0026. The Court subsequently denied the
5  Navy's attempt to strike JCI's supplementation to the CAR. [Doc. No. 26].

6      The parties then filed the present cross-Motions for Summary Judgment. After each motion
7  was fully briefed, the Court took them under submission pursuant to the Civil Local Rule 7.1(d)(1).

## LEGAL STANDARD

9      Summary judgment is proper where the pleadings and materials demonstrate "there is no
10 genuine issue as to any material fact . . . the movant is entitled to judgment as a matter of law."
11 FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact
12 is a question a trier of fact must answer to determine the rights of the parties under the applicable
13 substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if
14 the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

15     The moving party bears "the initial responsibility of informing the district court of the basis
16 for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that
17 no genuine issue of material fact exists for trial. Id. at 322. Where the moving party does not have the
18 ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways:
19 "The moving party may produce evidence negating an essential element of the nonmoving party's
20 case, or, after suitable discovery, the moving party may show that the nonmoving party does not have
21 enough evidence of an essential element of its claim or defense to carry its ultimate burden of
22 persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).
23 To withstand a motion for summary judgment, the non-movant must then show that there are genuine
24 factual issues which can only be resolved by the trier of fact. Reese v. Jefferson Sch. Dist. No. 14J,
25 208 F.3d 736, 738 (9th Cir. 2000). The non-moving party may not rely on the pleadings alone, but
26 must present specific facts creating a genuine issue of material fact through affidavits, depositions,
27 or answers to interrogatories. FED. R. CIV. P. 56(e); Celotex, 477 U.S. at 324.

28     The court must review the record as a whole and draw all reasonable inferences in favor of the

1  non-moving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). To avoid
2  summary judgment, the non-moving party need not produce evidence in a form that would necessarily
3  be admissible at trial. Celotex, 477 U.S. at 324. However, unsupported conjecture or conclusory
4  statements are insufficient to defeat summary judgment. See Hernandez, 343 F.3d at 1112; Surrell v.
5  Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

## DISCUSSION

### I.  FOIA cause of action

FOIA was enacted to "facilitate public access to Government documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). Doing so, it was hoped, would "'ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citations omitted). Accordingly, the Supreme Court has interpreted FOIA's disclosure provisions broadly, noting the statute was animated by a "general philosophy of full agency disclosure." Id. (citation omitted). At the same time, FOIA contemplates that some information may legitimately be kept from the public. The statute contains nine enumerated exemptions allowing documents or portions of documents to be withheld. See 5 U.S.C. § 552(b)(1)-(9). However, FOIA's "strong presumption in favor of disclosure," Ray, 502 U.S. at 173, means that its exemptions "'must be narrowly construed.'" John Doe Agency, 493 U.S. at 152 (citation omitted).

In a reverse-FOIA case such as this one, a party seeking to enjoin the government from releasing records does not actually have a cause of action under FOIA itself. Chrysler Corp. v. Brown, 441 U.S. 281, 293-94 (1979). Rather, that party may seek review of the agency's final decision under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-06. Pac. Architects & Engineers Inc. v. U.S. Dep't of State, 906 F.2d 1345, 1347-48 (9th Cir. 1990). The district court's standard of review under the APA is whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See id. at 1348 (quoting 5 U.S.C. § 706(2)(A)). "In determining whether an agency's decision is arbitrary or capricious, the court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. This inquiry must be searching and careful, but the ultimate standard of review is

a narrow one.'" Morongo Band of Mission Indians v. F.A.A., 161 F.3d 569, 573 (9th Cir. 1998) (quoting Marsh v. Or. Natural Res. Council, 490 U.S. 360, 278 (1989)).

The exemption at issue in this case is Exemption 4, the so-called "trade secrets" exemption, which is available to prevent disclosure of: (1) trade secrets and (2) information that is (a) commercial or financial, (b) obtained from a person, and (c) is privileged or confidential. 5 U.S.C. § 552(b)(4). These three requirements are conjunctive. Pac. Architects, 906 F.2d at 1347. In this case, there is no dispute that the information sought to be withheld is both "commercial" and was "obtained from a person." The question, therefore, is whether that information is "privileged or confidential."

In Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765 (D.C. Cir. 1974), the D.C. Circuit established the prevalent test for determining whether the information sought to be withheld is "privileged or confidential." Pursuant to the National Parks test, the information is confidential if disclosure would (1) impair the government's ability to obtain necessary information in the future, or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. G.C. Micro Corp. v. Defense Logistics Agency, 33 F.3d 1109, 1112-13 (9th Cir. 1994) (citing Nat'l Parks, 498 F.2d 765). To satisfy the "competitive harm" prong, a showing of actual harm is not required. Rather, the person seeking to withhold the documents need only show that there is: (a) "actual competition in the relevant market," and (b) "a likelihood of substantial competitive injury if the information were released." Lion Raisins Inc. v. U.S. Dep't of Agriculture, 354 F.3d 1072, 1079 (9th Cir. 2004) (citing G.C. Micro, 33 F.3d at 1113). In this case, the only issue in dispute is whether there is a likelihood of "substantial competitive injury" if the information were released.

A.   Failure to keep information confidential

To justify protection under Exemption 4, "a submitter must present persuasive evidence that disclosure of the unit prices would reveal some confidential piece of information, such as a profit multiplier or risk assessment, that would place the submitter at a competitive disadvantage." Comdisco, Inc. v. Gen. Servs. Admin., 864 F. Supp. 510, 516 (E.D. Va. 1994). In the present case, JCI failed to meet its burden. First, to the extent JCI publicly disclosed some of the information at issue, that information cannot now be withheld. As the Navy notes, JCI's counsel listed seventeen of its purported confidential prices in a March 13, 2009 letter to the FISCSD, which was then filed using

1  this Court's publicly available CM/ECF system on October 1, 2009. [See Doc. No. 5-1, Ex. 4].
2  Information that is public knowledge or that is otherwise publicly available cannot by definition be
3  "confidential." See CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C. Cir. 1987) ("To the extent
4  that any data requested under FOIA are in the public domain, the submitter is unable to make any
5  claim to confidentiality-a *sine qua non* of Exemption 4." (citation omitted)); Starkey v. U.S. Dep't of
6  Interior, 238 F. Supp. 2d 1188, 1193 (S.D. Cal. 2002) (same). Accordingly, because these prices have
7  been in the public domain for the past nine months, and because they were not subsequently sealed,
8  destroyed, or otherwise rendered unavailable, they cannot be exempt from production under FOIA.
9  See, e.g., CNA Holdings, Inc. v. U.S. Dep't of Justice, 3:07-CV-2084-B, 2008 WL 2002050, at *6
10 (N.D. Tex. May 9, 2008) (finding that documents that were filed with the court and using the PACER
11 system, and which were not sealed, destroyed, or otherwise rendered unavailable by the court, "are
12 in the public domain and cannot therefore be exempt from production under FOIA").

13      B.      Too many fluctuating variables for competitors to gain any advantage

14      As to the information that was not publicly disclosed, JCI still fails to meet its burden of
15 showing there is a likelihood of "substantial competitive injury" from its disclosure. The only items
16 that JCI seeks to withhold from disclosure are the "unit prices" for different individual breakout items
17 contained in the contract. (See, e.g., CAR, at 26-27, 65-147.) Those unit prices, however, do not
18 contain any indication of JCI's "profit multiplier" or "risk assessment," such as to "place the submitter
19 at a competitive disadvantage." See Comdisco, 864 F. Supp. at 516.

20      JCI argues, nonetheless, that disclosure of those prices would enable JCI's competitors to
21 determine: (1) the percentage by which JCI marks up the bids it receives from subcontractors, (2)
22 whether it was able to negotiate a discount with any vendor, (3) what hourly rate it charges for straight
23 time and overtime work, (4) what particular methods it uses in manufacturing an item, as well as (5)
24 the overall structure of the pricing methods used by JCI. (Pl. MSJ, at 11-12.) However, the Ninth
25 Circuit has rejected similar arguments in the past where the information sought to be withheld was
26 "made up of too many fluctuating variables for competitors to gain any advantage from [its]
27 disclosure." G.C. Micro, 33 F.3d at 1115; accord Pac. Architects, 906 F.2d at 1347-48.

28      For example, in Pacific Architects, the plaintiff similarly sought to prevent an agency from

disclosing unit prices in its contract for providing maintenance and operations services. 906 F.2d at 1346. The plaintiff argued disclosure would allow a competitor "to calculate its profit margin simply by subtracting from the 'unit price rates' in the contract the various component parts which make up those rates." Id. at 1347. The agency rejected plaintiff's objections, noting that "disclosure of the 'unit price rates' would not cause competitive harm to PAE because of the number of variables that went into determining these rates for the various job categories." Id. at 1346. The district court subsequently sustained the agency's determination, finding that it was not arbitrary, capricious, or otherwise not in accordance with the law, and the Ninth Circuit affirmed. Id. at 1346-48.

Likewise, in G.C. Micro–which was a direct FOIA action–the agency refused to disclose subcontracting information from three of its contractors. 33 F.3d at 1113-14. According to the agency, that information would have provided competitors with a roadmap of those contractors' subcontracting plans and strategies, effectively allowing them to alter their own subcontracting strategies to better compete against those contractors. Id. at 1114. After the district court sustained the agency's determination, the Ninth Circuit reversed, noting there was no likelihood of substantial harm because the data sought to be released was "made up of too many fluctuating variables for competitors to gain any advantage from [its] disclosure." Id. at 1115.

The same is true in this case. As the Navy noted in its initial response to JCI's objections, the contract at issue "does not contain breakouts for cost, profits, G&A, unburdened labor rates, or similar information." (CAR, at 23.) Nor is the Court persuaded by JCI's arguments to the contrary. All of the arguments about how JCI's competitors can use the disclosed information to underbid JCI are conclusory in nature and fail to address the Ninth Circuit's concerns in both Pacific Architects and G.C. Services. Indeed, just like in those cases, the presence of too many fluctuating variables in this case makes it unlikely that JCI's competitors would be able to deduce JCI's overall bid strategy and be able to underbid JCI in the future. Moreover, even if the Court was to agree with JCI that its competitors could potentially deduce some of its strategy, JCI has failed to demonstrate that any

resulting harm would be "substantial."[1] See G.C. Micro, 33 F.3d at 1115.

### C. Use of the "unit prices" themselves

JCI next argues that its CLINs not only reflect its pricing strategy, but "could also be used <u>without</u> augmentation by the competitor in submission of a bid to the NAVY."[2] (Pl. MSJ, at 13.) In essence, JCI is arguing that it is the unit prices *by themselves* that constitute confidential information, disclosure of which would substantially injure JCI. However, whether such prices will remain the same and be at all useful to JCI's competitors is purely speculative. Although JCI indicates that its prices have remained the same for the five years covered by the contract, (see Withers Decl., ¶ 17 [Doc. No. 22-2]), JCI concedes that "it is currently unknown for how long JCI's CLINs could be [useful]." (Pl. Reply, at 8.) Indeed, JCI's contentions are similar to those rejected by the Fourth Circuit in Acumenics Res. Tech. v. U.S. Dep't of Justice, 843 F.2d 800 (4th Cir. 1988). Just like in Acumenics, JCI has "carefully hedged its position." See 843 F.2d at 807. Nowhere does JCI make an absolute claim that the unit prices it uses to bid on government contracts today are the same as those used in the contract. Instead, JCI makes a series of qualified claims: (1) that the prices *during the contract's five year period*–i.e., between 2002 and 2007–remained the same, (2) that its competitors could use those unit prices to establish JCI's pricing that "would be very similar or identical" to JCI's present pricing, and (3) that the prices of some "various items and services detailed in JCI's CLINs" have not changed over the past year "due to the current state of the economy." These conclusory

---

[1] JCI's arguments to the contrary are not persuasive. Even if the Court accepts JCI's contention that competitors obtain quotations from many of the same vendors with nearly the same prices, that does not explain how they will be able to determine by how much JCI marks up the bids it receives, whether it received a discount from any vendors, or JCI's overall structure of the pricing methods. In other words, if all that the competitors have are the typical prices in the market and JCI's unit prices, it is unclear how they will be able to determine whether any difference is due to a mark-up, discount, or a combination of both. As such, the presence of too many fluctuating variables makes it unlikely that JCI's competitors would be able to use the released unit prices to underbid JCI in the future. See G.C. Micro, 33 F.3d at 1115; accord Pac. Architects, 906 F.2d at 1347-48.

Moreover, to the extent JCI seeks to preclude the release of the hourly rate that JCI charges for straight time and overtime work, (see Pl. MSJ, at 4), JCI has not cited to any authority that would allow exemption based only on those variables.

[2] The Court rejects the Navy's contention that the Court should not consider this argument because it was never raised before the agency. A review of JCI's objections submitted to the agency indicates that the use of the unit prices *by themselves* to underbid JCI was one of JCI's concerns with the intended disclosure. (See, e.g., CAR, at 8.)

allegations are insufficient to show that JCI will suffer substantial injury as a result of disclosure. See G.C. Micro, 33 F.3d at 1109 (noting that "conclusory and generalized allegations of competitive harm are insufficient to show that requested information is 'confidential' under the second prong of the National Parks test"); Acumenics, 843 F.2d at 807-08 (rejecting as unsupported by any independent evidence plaintiff's argument that production rates and wages were standardized across the industry).

Indeed, other courts have declined to protect from disclosure information that was no longer current. See, e.g., Acumenics, 843 F.2d at 808 n.8 (allowing disclosure where the competitive harm would be minimal because the information was stale); Boeing Co. v. Dep't of Air Force, 616 F. Supp. 2d 40, 49 (D. D.C. 2009) (concluding that while the agency could properly withhold information about the future rates, it could not withhold the information about the past rates). In this context, the D.C. Circuit's decision in McDonnell Douglas, 375 F.3d 1182, is not inapposite. There, the court agreed with the plaintiff that release of the option year prices in an unexpired contract would likely cause the plaintiff substantial competitive harm because it would increase the probability that plaintiff's competitors would underbid it in the event the agency rebid the contract. McDonnell Douglas, 375 F.3d at 1189. However, crucial to the D.C. Circuit's decision was the fact that the prices sought to be withheld were for *future* unexercised option years, which the court concluded were likely to cause plaintiff substantial competitive harm if released. Id. In the present case, on the other hand, JCI seeks to withhold unit prices in an *already expired* contract, where all of the option years have been exercised. The Court, accordingly, is persuaded that any resulting competitive harm to JCI from the release of this "stale" information would be minimal. See Acumenics, 843 F.2d at 808 n.8.

D. Public interest in favor of disclosure

Finally, in making its determination, the Court "must balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information." G.C. Micro, 33 F.3d at 1115 (citing Nat'l Parks, 498 F.2d at 768-69). In the present case, that public interest outweighs any confidentiality concerns JCI might have in its unit prices. "Disclosure of prices charged the Government is a cost of doing business with the Government. . . . Adequate information enables the public to evaluate the wisdom and efficiency of federal programs and expenditures." Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin., 559 F. Supp. 4, 6 (D. D.C. 1981). As one court has explained:

> In perhaps no sphere of governmental activity would that purpose appear to be more important than in the matter of government contracting. The public, including competitors who lost the business to the winning bidder, is entitled to know just how and why a government agency decided to spend public funds as it did; to be assured that the competition was fair; and, indeed, even to learn how to be more effective competitors in the future.

Martin Marietta Corp. v. Dalton, 974 F. Supp. 37, 41 (D. D.C. 1987). In this case, after considering JCI's objections, the Navy determined that the release of the contract was not likely to reveal sensitive information affecting JCI's future competitive procurements. In light of the strong public interest in favor of disclosure, the Court cannot find that conclusion, and the Navy's decision to release the contract, to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### E.  Conclusion

Because JCI has failed to show that release of the contract will cause it substantial competitive harm, JCI has failed to demonstrate that Exemption 4 is applicable in this case. Accordingly, the Court GRANTS the Navy's Motion for Summary Judgment on this issue.

## II.  **Trade Secrets Act cause of action**

JCI's second cause of action alleges that disclosure by the Navy of JCI's CLIN information at issue here would also violate and contravene the Trade Secrets Act, 18 U.S.C. § 1905.[3] The Trade Secrets Act, the scope of which is at least "coextensive" with Exemption 4, Pac. Architects, 906 F.2d at 1347, "effectively prohibits an agency from releasing information subject to the exemption." McDonnell Douglas, 375 F.3d at 1185-86. Although the Navy correctly argues that the proprietor of commercial information does not have a private right of action to enforce § 1905, the proprietor may seek review of an agency decision that violates the Trade Secrets Act on the ground that it is "not in accordance with law" under the APA, 5 U.S.C. § 706(2)(A). Chrysler Corp. v. Brown, 441 U.S. 281,

---

[3] The Trade Secrets Act provides a criminal penalty for

> Whoever, being an officer or employee of the United States . . . publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties . . . which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association . . . .

18 U.S.C. § 1905.

1  316-18 (1979); <u>United States v. Geophysical Corp. of Alaska</u>, 732 F.2d 693, 701 (9th Cir. 1984).

2  Section 1905, however, cannot override the FOIA's obligatory disclosure provisions. <u>See</u> <u>CNA Fin. Corp.</u>, 830 F.2d at 1141-42; <u>Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n</u>, 750 F.2d 1394, 1401-02 (7th Cir. 1984) ("[T]he Trade Secrets Act has no independent force in cases where the Freedom of Information Act is involved . . . ."). Thus, if the information is not protected by Exemption 4, it is not protected by the Trade Secrets Act. <u>See</u> <u>Gen. Elec. Co.</u>, 750 F.2d at 1402; <u>AT & T Info. Sys., Inc. v. Gen. Servs. Admin.</u>, 627 F. Supp. 1396, 1405 (D. D.C. 1986) ("[T]he determination that Exemption 4 is inapplicable compels as well the conclusion that section 1905 of the Trade Secrets Act is inapplicable."). Accordingly, because the information in this case is not protected by Exemption 4, neither can it be protected by the Trade Secrets Act. Therefore, the Court GRANTS the Navy's Motion for Summary Judgment on this issue as well.

## CONCLUSION

For the foregoing reasons, the Navy's determination that the unit prices in the contract are not protected by FOIA's Exemption 4 was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the Court **GRANTS** the Navy's Motion for Summary Judgment as to the first cause of action. Similarly, because this information is not protected by Exemption 4, it is also not protected by the Trade Secrets Act. Thus, the Court likewise **GRANTS** the Navy's Motion for Summary Judgment as to the second cause of action. Finally, for the same reasons, the Court **DENIES** JCI's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**DATED: July 23, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**